UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Auzio Hewlett,

           Petitioner,                    Court File No. 19-cv-1123 (WMW/LIB)

    v.

                                    **REPORT AND RECOMMENDATION**

Warden Kallis,

           Respondent.

      This matter came before the undersigned United States Magistrate Judge pursuant to a referral for report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b) and Local Rule 72.1, and upon Petitioner Auzio Hewlett's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, [Docket No. 1].

      For the reasons set forth below, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**, and this action be **DISMISSED** with prejudice.

I.      **BACKGROUND AND STATEMENT OF FACTS**

      In Spring 2003, Petitioner was arrested in possession of several kilograms of cocaine and marijuana. United States v. Hewlett, 453 F.3d 876, 878 (7th Cir. 2006). Following a jury trial, Petitioner was convicted of conspiracy to distribute and to possess with intent to distribute 50 grams or more of crack cocaine and 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. (Id.). Petitioner was sentenced to 240 months imprisonment. (Id.). Plaintiff's sentence was imposed on May 14, 2005. (Pet. [Docket No. 1], at 2).

      Petitioner is currently incarcerated at the Federal Medical Center in Rochester, Minnesota. (Id.). On March 2, 2018, an Incident Report was created for an alleged violation of

Code 297, use of the telephone for abuses other than criminal activity (circumventing telephone monitoring procedures and 3rd party calling) (the "Incident Report"). (Ex. D [Docket No. 11-4], at 1). As reported in the Incident Report, the reporting officer monitored a telephone call that inmate E.J. placed on January 23, 2018, (the "Call") to telephone number XXX-XXX-2828 (the "Phone Number"). (Id.).

At the outset of the Call, E.J. told the person on the phone "I am calling for your husband." (Id.). During the Call, the reporting officer could "clearly hear another inmate on the phone." (Id.). The reporting officer had spoken with Petitioner on two occasions and had listened to numerous telephone calls that Petitioner had placed. (Id.). The reporting officer was "very familiar" with Petitioner's voice and was certain that Petitioner was the second inmate on the phone during the Call. (Id.).

A search of the Phone Number revealed that E.J. had added the Phone Number to his account on January 23, 2018, and listed it as belonging to his friend, E.G., but E.J. deactivated the Phone Number from his account on January 28, 2018. (Id.). A further search of the Phone Number revealed that Petitioner had previously added the Phone Number on his account and listed it as belonging to his spouse, A.S., but Petitioner deactivated it from his account on January 23, 2018.

Petitioner was allowed 300 minutes of telephone use per 30-day cycle. (Id.). On January 23, 2018, Petitioner had used 299 minutes of his 300 minutes for that 30-day cycle. (Id.). The duration of the Call was five minutes. (Id.). During much of the call, the reporting officer could hear E.J. speaking to a female caller and then relaying what she said to Petitioner. (Id.). Petitioner would then tell E.J. what to say to the female caller. However, there were times during the call where the female caller spoke, and Petitioner responded without E.J. acting as the middle

2

person. (Id.). There were also times where the female caller replied to things Petitioner said without E.J. acting as a middle person. (Id.). Although Petitioner may have not physically touched the phone, it was clearly obvious to the reporting officer that Petitioner was also using the phone to speak to the female caller. (Id.).

On March 2, 2018, a copy of the Incident Report was delivered to Petitioner. (Id. at 3). At that time, Petitioner was advised of his rights and acknowledged that he understood those rights. (Id.). Petitioner stated, "I'm not guilty, and it was not me." (Id.). Petitioner also requested E.J. as a witness. (Id.). The Incident report was referred to the Unit Disciplinary Committee ("UDC"). (Id.).

On March 8, 2018, the UDC conducted am initial hearing on the Incident Report. (Id. at 2). Petitioner stated, "Not Guilty." (Id. at 1). The incident report was referred to the Discipline Hearing Officer ("DHO") to conduct a DHO hearing. (Id.).

On March 16, 2018, DHO DeLoia conducted a DHO hearing on the Incident Report (the "Hearing"). (Ex. G [Docket No. 11-7]). On April 6, 2018, DHO DeLoia issued a written DHO Report on the Hearing (the "Hearing Report"). (Id.). According to the Hearing Report, Petitioner requested no staff representative and presented no documentary evidence. (Id. at 2).  Petitioner stated, "not guilty." (Id.).  Petitioner's witness, E.J., stated, "[Petitioner] wasn't using the phone. It wasn't [Petitioner] I was relaying the message to." (Id. at 1).

The Hearing Report also stated that the DHO considered the TRUPHONE documentation and recording and found the TRUPHONE recording of the phone call corroborated the Incident Report. (Id. at 2). The DHO considered the E.J.'s statement, but found that it was not credible because he was involved in the incident. (Id.). And the DHO considered Petitioner's statement. (Id.).

The DHO found that Petitioner had violated Code 297 by circumventing the phone monitoring procedures. (Id. 2–3). Petitioner was sanctioned with 27 days disallowance of good conduct time, 90 days restricted visits (immediate family only), and 90 days loss of phone privileges. (Id. at 3).

On April 30, 2018, Petitioner filed an administrative remedy appeal regarding the DHO's decision following the Hearing. (Ex. H [Docket No. 11-8], at 2–3). On appeal, the Regional Director discovered a procedural error and returned the Incident Report to the DHO for corrective action to ensure compliance with the Inmate Discipline Program. (Id. at 2). The Regional Director explained,

> An inmate must receive a written copy of the charge against them at least 24 hours prior to appearing before the Discipline Hearing Officer. The incident report included in the DHO packet does not document delivery to the inmate. The incident report should be delivered to the inmate, notating the staff member name, date and time.

(Id. at 1).

On June 20, 2018, a copy of the Incident Report was delivered to Petitioner. (Ex. I [Docket No. 11-9]). Petitioner was advised of his rights and that there would be a rehearing on the Incident Report (the "Rehearing"). (Ex. J [Docket Nos. 11-10]; Ex. K [Docket No. 11-11]). For the Rehearing, Petitioner did not request a staff representative or any witnesses. (Ex. K [Docket No. 11-11]).

On June 22, 2018, DHO conducted the Rehearing. (Ex. L [Docket No. 11-12], at 1). That day, Petitioner provided a writing that stated: "For the DHO: Informational Purposes Only. I am not attending this DHO meeting today, 6-22-2018, due to the fact I have appeal the Regional Director's . . . [decision regarding Petitioner's administrative remedy appeal of the DHO's decision following the Hearing]. I was dissatisfied with that response" (the "Written Statement").

(<u>Id.</u> at 2). Petitioner did not appear at the hearing. (<u>Id.</u>). On July 20, 2019, DHO DeLoia issued a written DHO Report on the Rehearing (the "Rehearing Report). (<u>Id.</u> at 4).

According to the Rehearing Report, Petitioner waived his Rehearing and did not present any new evidence or any witnesses to refute the Incident Report. (<u>Id.</u> at 2). Therefore, the original findings and sanctions were upheld. (<u>Id.</u>). The Rehearing Report also stated that "[t]he proceeding information is from the original DHO report" and included the Hearing Report's explanation of findings and evidence that was considered, which included the statements made by Petitioner and E.J. at the Hearing. (<u>Id.</u> at 2–3).

On August 21, 2018, Petitioner filed an administrative remedy appeal regarding the DHO's decision following the Rehearing. (Ex. M [Docket No. 11-13], at 1–2). The Acting Regional Director upheld the DHO's decision. (<u>Id.</u> at 1). The Regional Director also stated that "[t]he DHO report contained administrative error(s). The error(s) have been corrected and a copy of the amended DHO report is attached . . . ." (<u>Id.</u>). Petitioner was informed that if he disagreed with the amendments, he could include that in his appeal to the next level. (<u>Id.</u>).

In Amended Rehearing Report, the language in the Rehearing Report that said the statements made by Petitioner and E.J. at the Hearing were considered was removed, and language that stated the DHO considered Petitioner's decision not to appear at the Rehearing and drew an adverse inference against Petitioner as a result was added. (Ex. N [Docket No. 11-14], at 2–3).

On February 25, 2019, Plaintiff exhausted his administrative remedies when his appeal to the Central Office was denied. (Ex. [Docket No. 1-1], at 5).

## II.        PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

On April 25, 2019, Petitioner initiated the case presently before the Court by filing his Petition for Writ of Habeas Corpus. [Docket No. 1]. Petitioner asserts that he was deprived of his good time credits without due process of law. (See, Pet. [Docket No. 1], at 4–5). Specifically, Petitioner asserts that his due process rights were violated on three grounds: (1) Petitioner was not allowed to fully exhaust his administrative remedies regarding the Hearing before the Rehearing was held; (2) DHO relied the findings of the Hearing to reach its decision regarding the Rehearing; and (3) there was "no evidence" to support the DHO's finding that Petitioner violated Code 297. (Id.).

As remedy for the first asserted due process violation, "Petitioner request the Court find the Rehearing . . . was unfair and order Petitioner to be allowed a new hearing where he can attend." (Id. at 4). As remedy for the second asserted due process violation, "Petitioner request this Court rule the DHO decision was erroneous and overturn the finding of guilt and restore Petitioner's Good Conduct time, and expunge the incident report from his Central File." (Id.). As remedy for the third asserted due process violation, "Petitioner request this Court to rule that there is 'NO EVIDENCE' that a code 297 occurred in the findings of the DHO and Order the sanctions be overturned, the Good Conduct Time of 27 days be allowed, and that the incident report be expunged from Petitioner's Central File." (Id. at 5).

### A.  Standard of Review

A federal prisoner may petition a federal district court for relief pursuant to 28 U.S.C. § 2241 when challenging the execution of his sentence or the length or duration of his confinement. Jones v. Jett, No. 10–cv–4201 (MJD/AJB), 2011 WL 5507222, at *2 (D. Minn. Aug. 12, 2011) report and recommendation adopted by 2011 WL 5408009 (D. Minn. Nov. 8,

2011), aff'd, 470 F. App'x 522 (8th Cir. 2012) (citing <u>Matheny v. Morrison</u>, 307 F.3d 709, 711 (8th Cir. 2002); <u>Mcintosh v. U.S. Parole Com'n</u>, 115 F.3d 809, 812 (10th Cir. 1997) (holding that a federal inmate's challenge to a loss of good time credit is properly brought under Section 2241 because it is a challenge to an action affecting the fact or duration of the petitioner's custody)). In the present case, Respondent acknowledges and represents that Petitioner has appropriately exhausted his administrative remedies with respect to the issue presently before the Court, and Respondent agrees that jurisdiction pursuant to 28 U.S.C. § 2241 is proper because Petitioner challenges a disciplinary matter that resulted in a loss of good conduct time and, accordingly, affects the duration of Petitioner's confinement. (Response [Docket No. 10], at 9).

The United States Supreme Court has recognized that "due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits." <u>Superintendent, Mass. Corr. Inst., Walpole v. Hill</u>, 472 U.S. 445, 453 (1985) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974)); see also <u>Espinoza v. Peterson</u>, 283 F.3d 949, 951 (8th Cir. 2002) (depriving a federal inmate of thirteen days good time credit as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause).

> Where a prison disciplinary hearing may result in the loss of good time credits, *Wolff* held that the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

<u>Hill</u>, 472 U.S. at 454 (citing <u>Wolff</u>, 418 U.S. at 563–67). "Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment. Thus the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily." <u>Hill</u>, 472 U.S. at 454 (citations omitted). However, an inmate's due process interests are necessarily tempered and balanced against the

"legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation." Id. at 454–55 (citing Ponte v. Real, 471 U.S. 491 (1985); Baxter v. Palmigiano, 425 U.S. 308, 321–22 (1976); Wolff, 418 U.S. at 562–63).

Accordingly, a federal inmate has received due process if "some evidence" supports a prison disciplinary board's revocation of good time credits. Hill, 472 U.S. at 455. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455–56. The United States Supreme Court explicitly declined to adopt a more stringent standard for reviewing prison disciplinary decisions, as due process "does not require courts to set aside decisions of prison administrators that have some basis in fact." Id. at 456. The power of federal courts to review the decision of the prison disciplinary hearing officer is limited because "[t]he federal courts are not part of the appellate process for prison disciplinary proceedings." Toombs v. Hicks, 773 F.2d 995, 997 (8th Cir. 1985) (citing Courtney v. Bishop, 409 F.2d 1185, 1187 (8th Cir. 1969)).

**B.  Analysis**

Based on the evidence in the present record, Petitioner received the constitutionally required protections during the course of the at-issue disciplinary proceeding, the Rehearing.

The record shows that Plaintiff was provided with advanced written notice of the charge when the Incident Report was delivered to Petitioner on June 20, 2018. (Ex. I [Docket No. 11-9]). The record shows that although Plaintiff was afforded the opportunity to call witnesses and

8

present evidence at the Rehearing, Petitioner waived his right to do so and chose not to attend the Rehearing. (Ex. K [Docket No. 11-11]; Ex. L [Docket No. 11-12]). And the record shows that a written statement by the factfinder was provided when the Rehearing Report was issued on July 20, 2018, albeit with administrative errors that were later amended. (Ex. L [Docket No. 11-12]; Ex. M [Docket No. 11-13]; Ex. N [Docket No. 11-14]). Thus, the <u>Wolff</u> requirements were fulfilled, and Petitioner was not deprived of constitutional due process. <u>See</u>, 418 U.S. at 563–67.

Furthermore, the present record before the Court indicates that "some evidence" supported the finding of the DHO that Petitioner violated Code 297, which prohibits "Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act." 28 C.F.R. § 541.3; (Ex. A [Docket No. 11-1], at 48).

A reporting officer monitored a telephone call placed by E.J. at the outset of which, E.J. told the person on the phone, "I am calling for your husband." (Ex. D [Docket No. 11-4], at 1). During the call, E.J. relayed messages between the female caller and another inmate whom the reporting officer identified as Petitioner. (<u>Id.</u>). DHO DeLoia listened to the recording and confirmed that it corroborated the Incident Report. (Ex. G [Docket No. 11-7], at 2). Moreover, the Phone Number had previously been listed on Petitioner's account as belonging to his spouse but had been deactivated the same day E.J. added the number to his account and the same day as the Call. (Ex. D [Docket No. 11-4], at 1).

Because the record identifies evidence that could support the conclusion reached by the disciplinary board, the Court is to look no further into Petitioner's evidentiary challenges. As articulated in the standard of review section, <u>supra</u>, the "some evidence" standard does not require examination of the entire record before the disciplinary board nor an independent

analysis and/or weighing of the evidence available to the board. Hill, 472 U.S. at 455–56. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Hill, 472 U.S. at 457. The Court finds that "some evidence" supports the results of the subject disciplinary proceeding.[1]

Petitioner argues that his constitutional due process rights were violated because he was not allowed to exhaust his remedies regarding the Hearing before the Rehearing was held. (Pet. [Docket No. 1], at 4; Reply [Docket No. 13], at 1–4). "Particularly, Petitioner is arguing that this caused him to be unable to attend the rehearing where he could have presented evidence in his own defense at the rehearing." (Reply [Docket No. 13], at 2).

There is no cognizable due process claim for Petitioner's assertion that the Rehearing could not be held until he was allowed to exhaust his remedies regarding the Hearing. See, Jones v. Jett, No. 10-4201 MJD/AJB, 2011 WL 5507222, at *3–4 (D. Minn. Aug. 12, 2011), report and recommendation adopted by 2011 WL 5408009 (D. Minn. Nov. 8, 2011), aff'd, 470 Fed. App'x

---

[1] Petitioner also argues that there was "no evidence" because Code 297 is "void for vagueness," and because Petitioner disagrees with the DHO's interpretation of Code 297 and contends that his actions were not prohibited as he interprets Code 297. (Pet. [Docket No. 1], at 5; Reply [Docket No. 13], at 7–10). Although the void-for-vagueness doctrine applies to prison regulations, some courts have held that the degree of specificity for prison regulations is not "as strict in every instance as that required of ordinary criminal sanctions." Dye v. Wilson, No. 15-2790 (SRN/JSM), 2016 WL 3578988, at *8 (D. Minn. June 9, 2016), report and recommendation adopted by 2016 WL 3580615 (D. Minn. June 28, 2016) (quoting Wolfel v. Morris, 972 F.2d 712, 717 (6th Cir. 1992)). "Moreover, federal courts defer to the interpretation of those rules by prison authorities, 'unless fair notice was clearly lacking.'" Id. at 9 (quoting Adams v. Gunnell, 729 F.2d 362, 369 (5th Cir. 1984)). Here, Petitioner was on notice that Code 297 prohibited the "[u]se of the telephone for abuses . . . which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called." (Ex. A [Docket No. 11-1], at 48). The Court finds that this language was sufficient to put Petitioner on notice of what conduct was prohibited, and therefore Code 297 is not void for vagueness. See, Spotts v. Holt, No. 3:11-CV-1880, 2015 WL 4219751, at *6 (M.D. Pa. July 10, 2015) ("Code 297 is not unconstitutionally vague. From the regulation, a prisoner making a call should know that he is not allowed to pass messages to and from another inmate and the person called because such would circumvent the ability of prison staff to monitor the frequency, content, and number called of the prisoner receiving the messages."); see also, Roundtree v. FCI Seagoville Warden Harmon, No. 3:16-cv-485-B-BN, 2017 WL 2791110, at *2 (N.D. Tex. May 17, 2017), report and recommendation adopted by 2017 WL 2790532 (N.D. Tex. June 26, 2017) (finding Code 297 is not void-for-vagueness). The Court further finds that Petitioner's argument regarding the interpretation of Code 297 is without merit. See, Dye, 2016 WL 3578988, at *9.

522 (8th Cir. 2012) (finding no due process violation where a rehearing was held while an appeal was pending on the initial hearing). Moreover, "[t]he Double Jeopardy Clause of the Constitution does not apply to prison proceedings and sanctions, because they are not criminal in nature." Dillard v. Watson, No. 17-4802 (JNE/DTS), 2018 WL 3928817, at *4 (D. Minn. Aug. 16, 2018); accord, Jones, 2011 WL 5507222, at *3.

The Regional Director discovered a procedural error in the Hearing and returned the incident report to DHO for corrective action to ensure Petitioner was afforded his due process rights. (Ex. H [Docket No. 11-8], at 1–2). To correct the procedural error, a Rehearing was held. (See, Id.). As explained above, the Rehearing fulfilled the Wolff, requirements. See, 418 U.S. at 563–67. Therefore, Petitioner was not deprived of constitutional due process. See, Jones, 2011 WL 5507222, at *4.[2]

Petitioner further argues that he was unable to attend the Rehearing or present evidence because he had not exhausted his remedies regarding the Hearing. (Reply [Docket No. 13], at 2). This argument is not supported by the record. The documentary evidence before the Court clearly shows that Petitioner was afforded the opportunity to call witnesses and present evidence at the Rehearing, however, Petitioner declined to do so. (Ex. K [Docket No. 11-11]; Ex. L [Docket No. 11-12]).

The due process right to call witnesses and present evidence "is not absolute and may be waived." Mullins v. Mullins, No. 2:16CV00021-BSM-JTR, 2016 WL 8814361, at *4 (E.D. Ark.

---

[2] Petitioner also argues that the decision to hold the Rehearing "a violation of the Administrative Remedy procedures." (Pet. [Docket No. 1], at 4; Reply [Docket No. 13], at 1–4). However, "[e]ven if Petitioner could establish that some of the BOP regulations were not met here, this would not entitle him to habeas relief. Habeas relief is only available for a violation of the Constitution, laws, or treaties of the United States." Martinez-Fuentes v. Fisher, No. 10cv00988 PJS/JJK, 2011 WL 2112428, at *5 (D. Minn. Apr. 5, 2011), report and recommendation adopted by 2011 WL 2112420, (D. Minn. May 27, 2011). "[T]here is no federal constitutional liberty interest in having . . . prison officials follow prison regulations." Id. (alterations in original) (quoting Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003); accord, Jones v. Fed. Bureau of Prisons, No. 09-1074 (MJD/RLE); 2010 WL 3118679, at *8 (D. Minn. Feb. 8, 2010), report and recommendation adopted by 2010 WL 3118664 (D. Minn. Aug. 4, 2010).

Sept. 27, 2016), report and recommendation adopted by Mullins v. Rivera, No. 2:16CV-00021 BSM, 2017 WL 1536225, at *4 (E.D. Ark. Apr. 27, 2017); see also, Moody v. Miller, 864 F.2d 1178, 1180 (5th Cir. 1989) ("If, through no fault of prison officials, a prisoner is unable or refuses to attend a disciplinary hearing, due process requires no more than that the hearing be held in accordance with all of the other requirements of due process that are called for under the circumstances."). Here, the Court finds that Petitioner was not deprived of constitutional due process because Petitioner waived his opportunity to call witnesses and present evidence at the Rehearing. See, Moody, 864 F.2d at 1180; Mullins, 2017 WL 1536225, at *4.

Petitioner argues that his due process rights were violated because the DHO relied on the findings of the Hearing to reach its decision regarding the Rehearing. (Pet. [Docket No. 1], at 4). The Rehearing Report included a verbatim transcription of the Hearing Report's explanation of evidence that was considered. (Ex. L. [Docket No. 11-12], at 2–3). This included the statement that "[t]he DHO considered [Petitioner's] statement during the DHO hearing in which you stated, 'Not guilty.'" (Id. at 3). The Rehearing Report also indicated that Petitioner's witness, E.J., made a statement that the DHO did not find credible because E.J. was involved in the incident. (Id.). Petitioner contends that he was deprived of due process because he made no statements and called no witnesses at the Rehearing, yet the Rehearing Report indicated that the statements made by Petitioner and E.J. during the Hearing were considered in reaching a decision on the Rehearing. (Pet. [Docket No. 1], at 4).

However, DHO DeLoia attested under penalty of perjury that he did not consider Petitioner's previous statement or E.J.'s previous witness statement in deciding the Rehearing. (DeLoia Decl. [Docket No. 11] ¶¶ 18, 24). DHO DeLoia further attested that inclusion in the Rehearing Report of the language from the Hearing Report regarding Petitioner's and E.J.'s

12

statements "was an administrative error made in the drafting of the [Rehearing Report] after the

rehearing on June 22, 2019." (Id.). Accordingly, references to the statements made by Petitioner

and E.J. during the Hearing were removed from the Amended Rehearing Report. (Ex. N [Docket

No. 11-14], at 2–3). Petitioner has provided no evidence to refute DHO DeLoia's "administrative

error" explanation. See, Whentworth v. Fischer, No. 10-2270 (JNE/JSM), 2011 WL 5077612, at

*10 (D. Minn. Oct. 7, 2011) ("Prison officials, like other officials, are presumed to be impartial

decisionmakers, and an inmate's subjective beliefs, without more, that the officials acted

improperly, are insufficient to survive summary judgment."); see also, Pinson v. Warden, FMC

Rochester, No. 17-CV-3790 (PJS/SER), 2019 WL 4645487, at *3 (D. Minn. Sept. 24, 2019)

("Administrative hearing officers are entitled to a 'presumption of honesty and integrity.'"

(citing Withrow v. Larkin, 421 U.S. 35, 46–47 (1975)). Therefore, the Court finds that Petitioner

was not deprived of constitutional due process by DHO DeLoia relying on the findings of the

Hearing to reach its decision regarding the Rehearing.

Moreover, even if DHO DeLoia had considered the statements made by Petitioner and

E.J. at the Hearing in reaching his decision in the Rehearing, Plaintiff has not shown he was

harmed. In the prison disciplinary setting, "even if a prison official's action created a potential

due process violation, a habeas petitioner needs to demonstrate that he was harmed by the

violation in order to obtain relief." Adams v. Fed. Bureau of Prisons, No. 11cv2862 (MJD/SER),

2011 WL 7293381, at *2 (D. Minn. Dec. 6, 2011) (citing Jordan v. Zych, No. 7:10-cv-00491,

2011 WL 2447937, at *4 (W.D. Va. Jun. 15, 2011)); see also, Powell v. Coughlin, 953 F.2d 744,

750 (2nd Cir. 1991) ("[I]t is entirely inappropriate to overturn the outcome of a prison

disciplinary proceeding because of a procedural error without making the normal appellate

assessment as to whether the error was harmless or prejudicial"); Piggie v. Cotton, 344 F.3d 674,

678 (7th Cir. 2003) (finding that due process violation constituted harmless error because prisoner failed to explain how excluded testimony would have aided his defense against disciplinary charges); Pilgrim v. Luther, 571 F.3d 201, 206 (2nd Cir. 2009) ("a prisoner is entitled to assistance in 'marshaling evidence and presenting a defense,'" but "any violations of this qualified right are reviewed for 'harmless error'"); Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006) ("errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review").

Here, Petitioner has not shown that the outcome of the Rehearing would have been different had his statement and E.J.'s statement from the Hearing not been considered. Therefore, the Court further finds that relief would not be warranted even if DHO DeLoia had considered the statements made by Petitioner and E.J. at the Hearing in reaching his decision in the Rehearing. See, e.g., Adams, 2011 WL 7293381, at *2.

Petitioner next argues that he was deprived of constitutional due process because the Rehearing Report did not state that DHO DeLoia considered Petitioner's decision not to appear at the Rehearing and drew an adverse inference against Petitioner, but the Amended Rehearing Report included such a statement. (Compare, Ex. L [Docket No. 11-12], at 2–3, with, Ex. N [Docket No. 11-14], at 2–3). Petitioner contends that he "had a right to be afforded all the evidence relied on by the Factfinder after the rehearing and where this did not occur the DHO's finding of guilt should be viewed as being erroneously made." (Reply [Docket No. 13], at 5).

Wolff requires the fact finder to provide a written statement setting forth "the reasons for the disciplinary actions taken." 418 U.S. at 564. This requirement serves two purposes:

> First, the requirement prevents arbitrary action by disciplinary boards; it 'helps to insure that administrators will act fairly.' Second, the written statement requirement facilitates review of the disciplinary proceeding by those reviewing bodies having penological concerns—such as officials considering whether to

transfer an inmate to another institution and parole boards making parole decisions—as well as those reviewing bodies more interested in the fairness and constitutional propriety of the proceeding—for example, state officials, the public, and the courts.

Brown v. Frey, 807 F.2d 1407, 1410 (8th Cir. 1986) (citing Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). However, due process does not require "technical and detailed disciplinary reports." Wilson v. Iowa, 636 F.2d 1166, 1168 (8th Cir. 1981). The requirement is "satisfied if the written statement, even though 'sparse in content,' is 'sufficient to inform [the inmate] of the evidence relied upon by the factfinders in reaching their decision to take disciplinary action.'" Brown, 807 F.2d at 1412.

Here, the Rehearing Report and Amended Rehearing Report satisfied the requirements of constitutional due process by informing Petitioner of the evidence relied upon. See, Id.; Wilson, 636 F.2d at 1168. The Rehearing Report indicated Petitioner's failure to appear at the Rehearing and included Petitioner's Written Statement, this was sufficient to inform Petitioner of the evidence relied upon by DHO DeLoia. (Ex. L [Docket No. 11-12], at 1–2). The Court cannot conclude that Petitioner was denied constitutional due process merely because the Amended Rehearing Report included additional explanation of how DHO DeLoia reached his decision. See Brown, 807 F.2d at 1412; Wilson, 636 F.2d at 1168.

Moreover, Petitioner has failed to show how he was harmed by the Rehearing report not informing Petitioner that DHO DeLoia considered Petitioner's decision not to appear at the Rehearing and drew an adverse inference against Petitioner. (See, Reply [Docket No. 13], at 5). The only assertion of harm that Petitioner has argued is that, "[h]ad the DHO not made the errors and included that additional information into the [Rehearing Report], Petitioner would have challenge the greater weight of the evidence balancing test conducted by the DHO." (Id.). However, the record indicates that Petitioner did challenge the greater weight of the evidence test

15

in his appeal to the Regional Director. (<u>See</u>, Exs. [Docket No. 1-1], at 9). Further, Petitioner's assertion is illogical because he has not indicated any reason why his challenge would only have been successful if <u>more</u> evidence supported the DHO's findings. (<u>See</u>, <u>Id.</u>). In addition, any harm would have been remedied when Petitioner was provided the Amended Rehearing Report. (<u>See</u>, <u>Id.</u>; <u>see also</u>, Ex. N [Docket No. 11-14]). Therefore, the Court finds that relief would not be warranted even if Petitioner had shown a potential due process violation. <u>See, e.g.</u>, <u>Adams</u>, 2011 WL 7293381, at *2.

Lastly, Petitioner argues that he was deprived constitutional due process because DHO DeLoia was not an impartial decision maker. Petitioner makes three assertions in support of this argument: (1) DHO DeLoia used the Petitioner's Written Statement as evidence against Petitioner; (2) DHO DeLoia acted as a "coobororate witness" by supporting the reporting officer's determination that Petitioner was the second inmate on the phone during the Call; and (3) DHO DeLoia had already decided Petitioner was guilty before the Rehearing. (Reply [Docket No. 13], at 4, 6–7).

"Typically, habeas petitioners may not raise new arguments or claims for relief in their reply memoranda." <u>Spencer v. Rios</u>, 18-cv-2639 (MJD/TNL), 2019 U.S. Dist. LEXIS 95319, at *23 (D. Minn. Apr. 23, 2019), report and recommendation adopted by 2019 U.S. Dist. LEXIS 94230 (D. Minn. June 5, 2019); <u>see also</u>, <u>Cuellar v. Fisher</u>, No. 10-2041 (SRN/FLN), 2011 WL 1261622, at *5 (D. Minn. Feb. 24, 2011) ("Because Petitioner raises this claim for the first time in his reply brief, it is not properly before this Court."). Here, Petitioner raised the argument that DHO DeLoia was biased against him for the first time in his Reply, [Docket No. 13]. However, even if it were permissible for Petitioner to raise this argument, it would fail for the reasons stated below.

"[D]ue Process requires an impartial decision-maker." Williams v. Benson, No. 11-cv-1837 (SRN/JSM), 2012 WL 4449457, at *5 (D. Minn. Sept. 26, 2012) (citing Malek v. Camp, 822 F.2d 812, 816 (8th Cir. 1987)). However, "the constitutional standard for impermissible bias is high." Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003). "Administrative hearing officers are entitled to a 'presumption of honesty and integrity.'" Pinson, 2019 WL 4645487, at *3 (citing Withrow, 421 U.S. at 46–47). To show bias in a habeas proceeding, the Petitioner must overcome that presumption and prove, by a preponderance of the evidence, that the hearing officer was biased. (Id.). A decision-maker is "not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding." Piggie, 342 F.3d at 666.

First, Petitioner argues that the record shows DHO DeLoia was biased against Petitioner because DHO DeLoia drew an adverse inference against Petitioner based on Petitioner's Written Statement and decision not to appear at the Rehearing. (Reply [Docket No. 13], at 4, 7). Petitioner contends that this shows bias because DHO DeLoia "was fully aware of the reason why Petitioner was not attending the rehearing." (Id. at 4; see also, Id. at 7). Petitioner seems to be arguing that DHO DeLoia acted "dishonestly" because DHO DeLoia did not, as he stated in the Amended Rehearing Report, actually believe that Petitioner would have made some statement in his defense at the Rehearing if Petitioner was innocent. (See, Id. at 4, 7; Ex. N [Docket No. 11-14], at 3).

However, DHO DeLoia is presumed to be an honest and impartial decision maker. See, Pinson, 2019 WL 4645487, at *3; Whentworth, 2011 WL 5077612, at *10. Petitioner has provided no evidence to support his assertion that DHO DeLoia acted dishonestly, other than the Written Statement coupled with Petitioner's bare assertion that DHO DeLoia knew Petitioner chose not to attend the Rehearing because he had not exhausted his remedies regarding the

Hearing. (See, Reply [Docket No. 13], at 4, 7). In addition, Petitioner was informed on June 20, 2018, that although he had the right to remain silent, his "silence may be used to draw an adverse inference against" him. (Ex. J [Docket No. 11-10]). Therefore, DHO DeLoia's decision to draw an adverse inference against Petitioner based on Petitioner's Written Statement and failure to appear at the Rehearing does not establish that DHO DeLoia was biased against Petitioner. See, Pinson, 2019 WL 4645487, at *3; Whentworth, 2011 WL 5077612, at *10.

Second, Petitioner argues that DHO DeLoia was biased because he acted as a "cobororate witness" by supporting the reporting officer's determination that Petitioner was the second inmate on the phone during the Call. (Reply [Docket No. 13], at 6). Petitioner's argument is based on DHO DeLoia's statement that he "reviewed the phone call and [Petitioner] can be heard in the back ground relaying messages to inmate [E.J.] to tell to [Petitioner's] spouse." (See, Id., see also, Ex. L [Docket No. 11-12], at 3; Ex. N [Docket No. 11-14], at 3; Hewlett Aff. [Docket No. 14] ¶ 3).

To the extent that Petitioner is arguing DHO DeLoia was a witness at the Rehearing, Petitioner's contention is not supported by the record. According to prison regulations, "[t]he DHO will consider all evidence presented during the hearing." (Ex. A [Docket No. 11-1] at 29). The record indicates that DHO DeLoia listened to a recording of the Call and reached the same conclusion as the reporting officer, that Petitioner could be heard relaying messages to E.J. (See, Ex. L [Docket No. 11-12], at 3; Ex. N [Docket No. 11-14], at 3). Merely reaching the same conclusion as the reporting officer does not make DHO DeLoia a "cobororate witness." Nor does it establish that DHO DeLoia was biased against Petitioner. See, Pinson, 2019 WL 4645487, at *3; Whentworth, 2011 WL 5077612, at *10; see also, Lamont Gentry Falls v. Fondren, No. 09-cv-49 (JMR/FLN), 2009 WL 10678803, at *5 (D. Minn. July 6, 2009) (citing

Ivy v. Moore, 31 F.3d 634, 634 (8th Cir. 1994)) (finding that conducting a personal investigation did not render a decision-maker biased).

To the extent that Petitioner is arguing that it was improper for DHO DeLoia to listen to a recording of the Call, whether this is because it was inadmissible at the Rehearing or for some other reason, Petitioner has not stated a cognizable constitutional due process claim. "[A] prisoner facing a loss of good time credits is not entitled to 'the full panoply' of procedural safeguards that attend a criminal prosecution." Adams, 2011 WL 7293381, at *1 (quoting Wolff, at 556). As explained above, the Wolff requirements were fulfilled, and therefore Petitioner was not deprived of constitutional due process. See, Id. Moreover, merely listening to a recording of the Call does not establish that DHO DeLoia was biased against Petitioner. See, Lamont gentry Falls, 2009 WL 10677803, at *5; see also, Pinson, 2019 WL 4645487, at *3; Whentworth, 2011 WL 5077612, at *10.

Third, Petitioner argues that DHO DeLoia was biased because he had already decided Petitioner was guilty before the Rehearing. (Reply [Docket No. 13], at 6). In support of this argument, Petitioner asserts in his affidavit that sometime between June 15 and 20, 2018, he approached his Unit Manager and requested a copy of his disciplinary record. (Hewlett Aff. [Docket No. 14], ¶ 5). Petitioner asserts that the finding of guilt at the Hearing was no longer on the disciplinary report, however, his good conduct time had not been restored to his release date. (Id.). Petitioner asked for an explanation, and his Unit Manager called the Receiving and Discharge department to obtain one. (Id.). According to Petitioner, his Unit Manager stated "he was told that [Petitioner's] Good Conduct Time had not been recalculated because Receiving and

Discharge was told not to, by the DHO in this case, because there was a rehearing being scheduled and that [Petitioner] would be found guilty."[3] (Id.).

Nonetheless, Petitioner has not provided the referred-to disciplinary record, nor any other substantiating evidence in support of his self-serving affidavit. (See, Exs. [Docket No. 1-1]). "[S]elf-serving allegations by a habeas petitioner, without more, are not sufficient to warrant relief." Jackson v. Swarthout, No. 2:10-cv-0494-GEB-EFB P, 2016 WL 3197373, at *7 (E.D. Cal. June 8, 2016). Accordingly, the unsubstantiated, third-hand allegations in Petitioner's affidavit that Petitioner's good conduct time was not replaced because DHO DeLoia informed the Receiving and Discharge department that Petitioner would be found guilty at the Rehearing are insufficient to establish bias. See, Williams v. Warden, FCI Edgefield, No. 1:17-cv-00946-JMC, 2018 WL 718959, at *2 (D.S.C. Feb. 5, 2018) ("Petitioner's own self-serving affidavit, containing unsubstantiated speculation, is insufficient to show that [the DHO] was not impartial and is insufficient to defeat summary judgment); Biafore v. Holder, No. 09-1335 (RBK), 2009 WL 4250033, at *4 (D.N.J. Nov. 25, 2009) ("[T]he unsupported allegation that [an officer] purportedly knew what would be the outcome of the DHO hearing in advance is insufficient to establish that the DHO was not impartial.").

Therefore, the Court finds that Petitioner has failed to rebut the presumption that DHO DeLoia was biased. See, Pinson, 2019 WL 4645487, at *3; see also, Piggie , 342 F.3d at 666; Williams, 2012 WL 4449457, at *5; Whentworth, 2011 WL 5077612, at *10.

Accordingly, this Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **denied**, and that this action be **dismissed with prejudice**.

---

[3] The Court notes that based on the present record, Petitioner had never asserted these factual allegations prior to his affidavit, [Docket No. 14], which accompanied his Reply, [Docket No. 13].

### III.    CONCLUSION

A.  Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  The Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**; and

2.  This action be **DISMISSED with prejudice.**


Dated: January 5, 2020

_____
s/Leo I. Brisbois
Leo I. Brisbois
U.S. Magistrate Judge


## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).